UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
**The Honorable A. Bruce Campbell**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CHERYL L. PEREZ, | ) | Case No. 05-25535-ABC |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| ——————————————— | ) | |
| | ) | |
| CHERYL L. PEREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Adv. Proc. No. 11-01580-ABC |
| KEVIN P. KUBIE, individually and in his | ) | |
| official capacity as chapter 7 trustee, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER ON TRUSTEE'S MOTION TO DISMISS AND
DEBTOR'S CROSS-MOTION FOR SUMMARY JUDGMENT**

This matter comes before the Court on: (a) the Motion to Dismiss[1] ("Motion") filed by Kevin P. Kubie ("Trustee" or "Defendant"); (b) the Opposition and Motion for Summary Judgment[2] ("Response") filed by Cheryl L. Perez ("Plaintiff" or "Debtor"); (c) Defendant's Reply and Response;[3] and Debtor's Reply.[4]  For the reasons that follow, the relief requested by Plaintiff is granted, in part, and denied in part, and the relief requested by Defendant is denied.

**I.     BACKGROUND AND UNDISPUTED FACTS**

Debtor commenced this adversary proceeding against Defendant, the chapter 7 Trustee in her bankruptcy case, asserting claims for "negligence, gross negligence, and/or act[ing] beyond mere mistake in business judgment, with actual knowledge to intentionally and deliberately cause harm to Debtor through his misfeasance and malfeasance in the administration of Cheryl

---

[1] Docket No. 7 in the instant Adversary Proceeding No. 11-1580 ABC.  The adversary proceeding docket is hereinafter cited as  "A.P. Docket."
[2] A.P. Docket No. 11.
[3] A.P. Docket No. 15.
[4] Exhibit 1 to A.P. Docket No. 16.

Perez's bankruptcy estate."[5]  These claims are asserted against Trustee individually and in his official capacity as chapter 7 Trustee.

The following undisputed facts appear from the materials submitted by the parties and from the Court's docket in the main case and this adversary proceeding.

### A. The Louisiana Appeal

For the most part, Debtor's allegations concerning Trustee's misconduct focus on Trustee's handling of the appeal of an April 7, 2005, judgment (the "Judgment"), entered by the Louisiana Civil District Court for the Parish of Orleans, against Debtor and her husband and in favor of S. Stewart Farnet ("Farnet").  On May 27, 2005, Debtor appealed the Judgment and, on June 22, 2005, filed a Chapter 11 bankruptcy.[6]  In her schedules, Debtor listed real property valued at $563,512.00, personal property valued at $533,399.61, secured claims totaling $15,700.00, unsecured priority claims totaling $16,256.00, and unsecured nonpriority claims totaling $949,781.59.[7]  Farnet is the largest creditor in Debtor's bankruptcy case.  He filed an unsecured nonpriority claim of $915,451.64 based on the Judgment.[8]

On August 24, 2006, the Court allowed Farnet's claim in the amount of $710,269.50.  The Court ruled that Louisiana's preclusion law prevented Debtor from collaterally attacking the validity of the Judgment, by way of a claims objection or otherwise, in her bankruptcy case.  According to Louisiana law, the Judgment was final for purposes of collateral estoppel or *res judicata* despite the pending appeal in the Louisiana state courts.  Thus, the only avenue for the Debtor to challenge Farnet's claim was to proceed with her appeal in Louisiana (hereinafter the "Appeal").

The same day that the Court allowed Farnet's claim, Debtor voluntarily converted her Chapter 11 case to Chapter 7.  One of the effects of the conversion was surrender of control of the Appeal by the substitution of the Trustee for the Debtor as the bankruptcy estate's fiduciary.  Upon the conversion, the authority to administer the estate's assets, including the ability to prosecute the Appeal, vested in the Trustee.  This notwithstanding, the Debtor made several attempts to pursue the Appeal.  The first attempt was made on August 30, 2006 by filing with this Court a motion for authority to pursue the Appeal.[9]  In the motion, the Debtor asserted that she had:

---

[5] Complaint ¶ 16.
[6] Debtor filed her petition under chapter 11 but voluntarily converted to chapter 7 on August 24, 2006.  Trustee then was appointed chapter 7 Trustee.
[7] Docket No. 247 in the underlying bankruptcy Case No. 05-25535 ABC, hereinafter "Main Case Docket."  Farnet's claim was listed in Debtor's schedules as "contingent, unliquidated, and disputed."
[8] Amended Proof of Claim No. 4-3 in Case No. 05-25535 ABC.
[9] Main Case Docket No. 231.

lodged an appeal in the Louisiana Fourth Circuit Court of Appeal.  The appeal is set for briefing and a decision on the merits.  The appeal seeks defensive and *affirmative monetary relief*, [the Debtor] asserted a counterclaim against Mr. Farnet in the original trial action.  The trial court disallowed the counterclaim.  This counterclaim is one of the matters appealed in the state court.

(italics in original).  The motion was unopposed.  On September 7, 2006, this Court denied Debtor's motion for authority to pursue the Appeal, concluding that "there is no basis to grant the relief requested" because it "is not for a Chapter 7 debtor to pursue property of the estate."[10]

Nearly two years later, in May, 2008, the Debtor again attempted to prosecute the Appeal, this time by requesting approval to enter into a stipulation with the Trustee.[11]  The stipulation included the following recitations: (a) "the Appeal is in the property of the…bankruptcy estate;" (b) "the Appeal has been held in abeyance by the Appeals Court;" (c) "the Trustee has investigated the nature and extent of the Appeal, the Debtor's claims in the litigation underlying the Appeal, and whether the Appeal is necessary to the administration of the Debtor's bankruptcy estate;" (d) "the Debtor…has agreed to pursue the Appeal on behalf of the Debtor's bankruptcy estate without any cost or expense to the Estate;" and (e) "the Trustee has determined that resolution of the Appeal involves the claim of Mr. Farnet against the Debtor's bankruptcy estate and thus necessary to his administration of this bankruptcy case…[but that the] Trustee has determined however that the cost of litigating the Appeal to the Estate would not be beneficial to the Debtor's bankruptcy estate."  The stipulation provided that "to the extent the Debtor is entitled to and/or awarded any funds in connection with the Appeal (or the underlying claims), the Debtors [sic] agree to immediately turnover all such funds to the Bankruptcy Estate."  Farnet objected to the stipulation based on alleged conflicts of interest between the estate and the lawyer who the Debtor and the Trustee had agreed would prosecute the appeal.[12]  On June 12, 2008, the Court denied the motion to approve the stipulation because of the attorney's conflicts of interest.  In the order denying approval, this Court stated that:

> If the Trustee, in his business judgment, determines that discharge of his responsibility requires challenging the Farnet judgment, the Trustee may only challenge it in the Louisiana appellate courts.  If that is the Trustee's decision, it is long since time diligently to prosecute the appeal by employing counsel who is not encumbered with a conflict that precludes representation of the Trustee under 11 U.S.C. § 327(e).  If the Trustee's business judgment leads him to a contrary, conclusion, it is time to abandon the Louisiana state court appeal and proceed with alacrity in otherwise administering and winding up this estate.[13]

---

[10] Main Case Docket No. 237.
[11] Main Case Docket No. 487.
[12] Main Case Docket No. 513.
[13] Main Case Docket No. 521.

Sometime thereafter the Debtor obtained new appellate counsel to pursue the Appeal. On January 8, 2009, seven months after the Court denied the Debtor's second attempt to pursue the Appeal, this new attorney contacted the Trustee.[14]   In the ensuing ten months, however, nothing further was filed by either the Trustee or the Debtor which would enable either to prosecute the Appeal.  Despite the delay and difficulty the Debtor apparently encountered in attempting to have the Trustee prosecute the Appeal on behalf of her estate, Debtor never sought to compel the Trustee to abandon the Appeal under 11 U.S.C. § 554(b).[15]

In the meantime, on July 2, 2009, Farnet filed a motion challenging the Trustee's handling of the case, including a motion to remove the Trustee for cause under 11 U.S.C. § 324.[16]  Farnet complained that the Trustee had failed to act diligently to close the estate, and he was particularly aggrieved by the Trustee's statement, in the summer of 2009, that the Trustee was still "considering whether to 'consent' to allow the Debtor to pursue the appeal with new counsel."[17]  In addition to removal of the Trustee for cause, Farnet's motion sought orders from the Court: (1) directing the Trustee to respond to Farnet's offers to purchase estate assets and to conclude administration of the estate; (2) directing the Trustee to close the estate within 90 days; (3) finding that the Trustee was breaching his fiduciary duty to close the estate expeditiously, and (4) disallowing compensation to the Trustee and his attorneys.[18]  On August 28, 2009, Farnet sent a letter to the Trustee containing negotiations over Farnet's motion to remove the Trustee, and other pending matters in the case.  Farnet offered to withdraw his claims against the Trustee provided the Trustee would either dismiss the Appeal or transfer the estate's rights in the Appeal to Farnet.[19]

After a hearing on Farnet's motion on September 22, 2009, the Court denied Farnet's requests to compel the Trustee to respond to Farnet's offers to purchase estate assets, to respond to proposals for concluding estate administration, and to close the estate expeditiously.  The Court set Farnet's motion to remove the Trustee for cause for a one-day trial to be held on January 15, 2010.[20]

On October 15, 2009, the Trustee moved for approval of a settlement on Farnet's claim and for authorization to dismiss the bankruptcy estate's interest in the Appeal (the "Appeal Settlement Motion").[21]  The Trustee stated in the motion that: (a) he had "investigated the assets

---

[14] Response ¶ 69.
[15] Motion,¶ 55, Response, ¶ 78-55.
[16] Main Case Docket No. 567.
[17] *Id.* at ¶ 5.
[18] *Id.* at p. 4-5.
[19] Motion, Exhibit O.
[20] Main Case Docket No. 589.
[21] Motion for Authorization to Approve Settlement on S. Stewart Farnet's Claim and for the Trustee to Dismiss Bankruptcy Estate's Interest in Louisiana Fourth Circuit Appeal with Prejudice [Main Case Docket No. 593].

4

disclosed by the Debtor, including the facts and circumstances related to the Louisiana Fourth Circuit Appeal [and had] consulted with many professionals in an effort to determine the likelihood of success on the merits versus the costs to the bankruptcy estate to litigate the appeal (and any subsequent appeal);"[22] (b) he "entered into an agreement with the Debtor's former counsel…to prosecute the Louisiana Fourth Circuit Appeal for the benefit of the Debtor's bankruptcy estate [but] such agreement was disapproved by the Bankruptcy Court;"[23] (c) following the disapproval, he "continued to investigate whether there was a likelihood of success on the merits of the Louisiana Fourth Circuit Appeal in lieu of the costs to the bankruptcy estate to litigate the appeal (and any subsequent appeal);"[24] (d) the "Debtor has been represented by many different attorneys during the course of this bankruptcy case all of whom have advised the Trustee as to the Debtor's position on the Louisiana Fourth Circuit Appeal;"[25] (e) he had "also examined the Debtor on several occasions providing the Debtor an opportunity to explain the nature of the Louisiana Fourth Circuit Appeal, the Debtor's position on the nature of Mr. Farnet's claims, the extent of the Debtor's defenses and the Debtor's position on the appeal;"[26] (f) and he "received extensive information from Mr. Farnet concerning Mr. Farnet's claims and defenses in the Farnet Action and the issues in the Louisiana Fourth Circuit appeal."[27]

The proposed settlement provided Farnet with an allowed claim of $710,269.50[28] and permitted the Trustee to dismiss the bankruptcy estate's interest in the Appeal with prejudice. On November 9, 2009, the Debtor objected to the Appeal Settlement Motion.[29]  Three days later, on November 12, 2009, the Louisiana Court of Appeal dismissed the Appeal, finding that the Appeal had been abandoned for failure to prosecute.[30]  This Court, on February 23, 2010, denied the Trustee's Appeal Settlement Motion as moot because "the interest of the estate in the [A]ppeal has been dismissed."[31]

In April, 2010, the Supreme Court of Louisiana granted Debtor's husband's writ of certiorari and reinstated the husband's appeal of Farnet's judgment.[32]  Thereafter, there was some confusion whether the estate's interest in the Appeal had also been reinstated.  Debtor continued to ask the Trustee to pursue the Appeal and the Trustee continued to decline.[33]  On September 10, 2010, Debtor again filed a "Motion to Pursue the Louisiana Appeal."[34]  The

---

[22] Appeal Settlement Motion ¶ 15.
[23] Appeal Settlement Motion ¶ 16.
[24] Appeal Settlement Motion ¶ 17.
[25] Appeal Settlement Motion ¶ 18.
[26] Appeal Settlement Motion ¶ 19.
[27] Appeal Settlement Motion ¶ 20.
[28] The claim, however, had already been allowed by the Court on August 24, 2006, in this exact amount.
[29] Main Case Docket No. 598.
[30] Motion, ¶ 53, Response, ¶ 10-53.
[31] Main Case Docket No. 635.
[32] Exhibit S to the Motion.
[33] Exhibits T, U, and V to the Motion.
[34] Main Case Docket No. 654.

Trustee and Farnet objected to this Motion.[35]   On November 4, 2010, the Louisiana Court of Appeals again dismissed the Appeal (or confirmed its prior dismissal), and on November 9, 2010, it dismissed Debtor's husband's appeal.[36]   On November 29, 2010, this Court denied Debtor's September, 2010 motion to pursue the Appeal as moot.[37]

### B. Non-Payment of Life Insurance Premiums

In addition to the matters surrounding the Appeal, Debtor claims the Trustee negligently or willfully breached his duties with respect to the payment of premiums on a life insurance policy on the life of her husband.   The undisputed facts relating to this claim are as follows.

At the time of her bankruptcy filing, the firm of Perez Architects/Interiors APC owned a $750,000 life insurance policy on the life of Debtor's husband.[38]   Perez Architects/Interiors APC was a corporation in which Debtor owned an interest.[39]   In September, October, and November, 2006, Debtor sent emails to the Trustee "reminding" him that a premium payment was due on the policy, stating that it was Debtor's understanding that the premium payment was the estate's responsibility, and asking him to advise Debtor if there was a problem with the Trustee paying the premium.[40]   The Trustee responded that "we have to act quickly on this to avoid the policy lapsing."[41]   In January, 2007, Debtor received notice that the policy had lapsed.[42]   The Trustee contacted the insurance company, arguing that the lapse of the policy was ineffective because the Trustee had not received proper notice of the default in premium payment and the cure period. [43] Debtor and Trustee then commenced negotiations concerning the use of funds from the Debtor's homestead exemption to cure the lapse.[44]   The Trustee contended that he could not use estate funds to make the premium payments, and the parties were unable to reach an agreement for the homestead funds to be used for this purpose.[45]

---

[35]Main Case Docket No. 656 and 657.
[36]Exhibit 1 to Main Case Docket No. 664.
[37]Main Case Docket No. 667.
[38]Exhibit FF to the Response.
[39]*Id.*, see also, Main Case Docket No. 247, where Debtor lists her interest in Perez Architect/Interiors APC as being worth $1,876.00.
[40]*Id.*
[41]*Id.*
[42]*Id.*
[43]*Id.*
[44]*Id.*
[45]*Id.*

### C.  Delay Forcing Debtor to Pay Taxes

In her Complaint, Debtor also alleges that the Trustee's delay in administering her estate forced Debtor to pay certain pre-petition tax claims.[46]  Trustee's Motion argues that it is undisputed that there was no undue delay in the administration of the estate.   Debtor's Response does not address the Trustee's argument as it relates to the payment of pre-petition tax claims, and she provides no evidence or argument concerning any taxes she was required to pay as a result of the delay.

## II.    DISCUSSION

### A.    The Motion to Dismiss/Motion for Summary Judgment.

As a threshold matter, if, on a motion to dismiss, matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment.[47]  The Trustee's Motion and Reply reference numerous matters outside the pleadings, and includes many supporting exhibits as well as affidavits.[48]  Debtor has responded with equally numerous matters outside the pleadings, including her own affidavits.   Accordingly, the Court will treat the parties' motions as cross-motions for summary judgment under Fed. R. Civ. P. 56.

Fed. R. Bankr. P. 7056 incorporates Fed. R. Civ. P. 56, which provides that a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[49]  Although a court need consider only the materials cited by the parties, it may consider other materials in the record.[50]  Further, if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may give an opportunity to properly support or address the fact.[51]

### B.    Standing.

The Trustee argues that the Debtor does not have standing to bring the claims she has asserted in this adversary proceeding.   Courts must apply a three-part test to determine the validity of a plaintiff's standing to state a claim: (1) plaintiff must suffer an "injury in fact – an invasion of a legally protected interest which is . . . (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical;" (2) a causal connection must exist between the injury and the conduct complained of – "the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . that of "some third party not before the court . . ."

---

[46] Complaint, ¶¶ 67, 68, and 71.
[47] Fed. R. Civ. P. 12(d).
[48] The Trustee appears to have expected his motion to be treated as one for summary judgment.   See the Motion p. 2.
[49] Fed. R. Civ. P. 56(a).
[50] Fed. R. Civ. P. 56(c)(3).
[51] Fed. R. Civ. P. 56(e)(1).

and (3) the injury must be "likely," rather than speculatively "redressed by a favorable decision."[52]

Trustee's argument is predicated on the notion that the Debtor is not aggrieved because her estate is not solvent. To that end, the Trustee notes that the liquidated proceeds of the bankruptcy estate's assets are $522,671.44 but claims are $716,995.87. The Trustee also argues that the Debtor's position is too speculative in that, to render the estate solvent, she must successfully argue that she would have prevailed in the appeal of the judgment representing the estate's largest claim. The Trustee's second argument can summarily be dismissed: in cases such as those involving alleged attorney malpractice, courts routinely are called upon to determine whether litigation that was not pursued would have been successful. This level of "speculation" does not deprive a malpractice plaintiff of standing. The Trustee's first argument, however, merits more discussion.

The Trustee concedes that Debtor would have standing if her estate was solvent, or potentially solvent. There is ample authority for chapter 7 debtors' standing to object to proofs of claim "when successful claim objections may result in a return of assets to the debtor."[53] In a case where surplus assets will be returned to a debtor if a claim is disallowed, the debtor has a clear pecuniary interest in the claims objection, and therefore, has standing.[54]

Here, the schedules filed by Debtor listed in excess of $1 million in assets. Excluding Farnet's Judgment, the total liabilities scheduled by Debtor were less than $57,000.[55] The Trustee's Final Report shows that, after payment of administrative expenses and payment to the Debtor for her exempt property, the Trustee had $573,558.80 to distribute.[56] Other than Farnet's, the unsecured claims against the estate total less than $10,000.00.[57] Thus, had the Trustee been successful in eliminating Farnet's claim through pursuing the Appeal, Debtor's estate would have been solvent with a substantial surplus to return to Debtor. One of the injuries Debtor claims is the failure to realize this potential surplus. Debtor complains that this injury was directly caused by the Trustee's negligent or willful failure to carry out his fiduciary duties.[58] Where the alleged injury caused by the Trustee's alleged breach of duty is the insolvency of the estate, the Trustee may not rely on this very insolvency to deny the Debtor standing to recover.

---

[52] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)(citations omitted).

[53] *In re Reynolds*, 470 B.R. 138, 147 (Bankr. D. Colo. 2012), citing *EDP Medical Computer Systems, Inc. v. U.S.,* 480 F.3d 621, 627 (2nd Cir. 2007).

[54] *EDP Medical Computer Systems, Inc. v. U.S.,* 480 F.3d at 726-27 (citing 4 *Collier on Bankruptcy* ¶ 502.02[2][c] (15th ed. 2006)).

[55] Main Case Docket No. 247.

[56] Main Case Docket No. 679.

[57] *Id.*

[58] The other injury complained of by Debtor – failure of Trustee to pay life insurance premiums resulting in cancellation of a life insurance policy of which she was beneficiary – is allegedly a direct pecuniary injury to Debtor caused by the Trustee's breach of duties. This breach of duty is not affected by the solvency of the estate, and Trustee has not argued Debtor lacks standing to pursue this claim.

Debtor has pled a particular injury caused by the Trustee's alleged failure to act appropriately in pursuing the Appeal or abandoning it to her in time that she could pursue it.  If Debtor can show that this failure to act was negligently or willfully in violation of Trustee's duties, and that the Appeal, on retrial or remand, would have been successful in eliminating Farnet's claim, her injury is capable of redress by a claim against the estate or against the Trustee in his personal capacity.[59]   Thus, Debtor has standing to pursue this claim.

## C.        Bankruptcy Trustees' Duties and Standards of Care

The duties of a Chapter 7 trustee are prescribed by statute in 11 U.S.C. § 704.  Debtor's claims implicate the Trustee's statutory duties to "collect and reduce to money the property of the estate and [to] close [the] estate as expeditiously as is compatible with the best interests of parties in interest,"[60] and the duty to "be accountable for all property received."[61]   Underlying these statutory duties are the trustee's common law fiduciary duties to beneficiaries of the estate, which include care, loyalty, and obedience.[62]   Debtor alleges that Trustee has breached these fiduciary duties as well.

In *Sherr v. Winkler,*[63] the Tenth Circuit Court of Appeals has enumerated the following standards of care applicable to bankruptcy trustees in the performance of their duties:

> The standard of care for a bankruptcy trustee is the exercise of due care, diligence and skill both as to affirmative and negative conduct; and that the standard or measure of due care, diligence and skill is that of an ordinary prudent man in the conduct of his private affairs under similar circumstances and with similar objects in view.[64]

Further:

> A trustee in bankruptcy is not to be held personally liable unless he acts willfully and deliberately in violation of his fiduciary duties.  A trustee in bankruptcy may be held liable in his official capacity and thus surcharged if he fails to exercise that degree of care required of an ordinarily prudent person serving in such capacity, taking into consideration the discretion allowed.[65]

---

[59]  If Debtor is successful on her claim against Trustee in his capacity as trustee, an administrative claim would lie against the estate.  *See Sherr v. Winkler*, 552 F.2d 1367, 1374-75 (10th Cir. 1977).  If Debtor is successful in her claim against Trustee in his individual capacity, Debtor may be able to collect from the Trustee or his bond.  See *In re Carter Paper Co., Inc.*, 220 B.R. 276 (Bankr. M.D. La. 1998).

[60] 11 U.S.C. § 704(a)(1).

[61] 11 U.S.C. § 704(a)(2).

[62] *In re Dalen*, 259 B.R. 586, 610 (Bankr. W.D. Mich. 2001).

[63] 552 F.2d 1367 (10th Cir. 1977).

[64]  552 F.2d at 1374 (citing *In re Johnson*, 518 F.2d 246 (10th Cir. 1975), *cert. denied*, 423 U.S. 893 (1975)).

[65]  *Sherr v. Winkler*, 552 F.2d 1367, 1375 (10th Cir. 1977).  It should be noted that *Sherr* has been criticized for distinguishing between surcharge and personal liability when, in fact, the two are the same.  Tiller, Personal Liability of Trustees and Receivers in Bankruptcy, 53 Am. Bankr. L.J. 75, 99-102 (Winter 1979) has said this of *Sherr*:

Debtor argues that *Sherr* is wrongly decided, but it is unquestionably binding on this Court. Therefore, with respect to Debtor's three separate claims for breach of the Trustee's duties, the Court applies the *Sherr* standards as follows.

### 1.        The Failure to Pursue or Abandon the Appeal.

The Debtor has alleged the elements of both official and personal liability under *Sherr*. She alleges that the Trustee failed to exercise due care or reasonable prudence and that he willfully and deliberately failed to perform his duties in his handling of the Appeal. The Trustee argues that he exercised reasonable discretion and business judgment in deciding not to pursue the Appeal, but he has not supported that contention with an affidavit that demonstrates his performance in accordance with the *Sherr* standards. The Trustee's affidavit in support of his Motion for Summary Judgment indicates only that he spoke with the United States Trustee's office about the Appeal. The affidavit gives no information concerning any evaluation of the Appeal by the Trustee or any facts suggesting that the Trustee exercised business judgment or any level of discretion in making the ultimate determination not to pursue the Appeal. Without further information, Trustee's affidavit supports Debtor's claim that the Trustee breached his duties to administer the Appeal and to evaluate Farnet's claim. The Court, however, may take judicial notice of additional materials in its files that were not cited by the parties but which may be considered pursuant to Fed. R. Civ. P. 56(c)(3).

As previously mentioned, on October 15, 2009, in the Appeal Settlement Motion, the Trustee moved for approval of a settlement on Farnet's claim and for authorization to dismiss the bankruptcy estate's interest in the Appeal.[66]   Though the statements made by the Trustee in support of the Appeal Settlement Motion may, if true, show that the Trustee exercised the due care, diligence, and skill necessary to defeat the Debtor's claims regarding his failure to pursue the appeal,[67] the Court cannot find, as a matter of undisputed fact, that he did so. Because of the timing of Farnet's motion to remove the Trustee for cause, and the Trustee's otherwise unexplained change of position on whether he would allow an attorney paid by the Debtor to pursue the Appeal, Debtor has raised an inference sufficient to create a disputed issue of fact as to

---

This language is questionable, in that it tries to distinguish the surcharge of a Trustee from personal liability while surcharge is in fact a means of imposing personal liability. In all the cases cited in the general discussion above concerning personal liability for loss to the estate in collection, preservation or distribution of the assets, surcharge and personal liability were synonymous.... the decision cites Mosser v. Darrow for the proposition that a Trustee or receiver is 'liable personally only for acts determined to be wilful and deliberate in violation of his duties' and 'liable in his official capacity, for acts of negligence,' for which the Trustee is surcharged. As explained earlier, Mosser made no such distinction. On the contrary, that case shows just the opposite, for while the Trustee in Mosser was found personally liable for a wilful and deliberate act, the result was a surcharge of the Trustee. Surcharge, in other words, was and is merely the means of imposing personal liability upon a bankruptcy Trustee or receiver for loss to the estate. It is certainly not, as the Sherr decision states, a means of imposing liability in his 'official capacity' unless that phrase is to be given a meaning entirely opposite to which traditional definition, i.e., where the estate rather than the fiduciary is required to bear loss to the third persons ... Sherr v. Winkler, it seems, uses all the language pertinent to personal liability of bankruptcy officers, but the contradicting and confusing manner in which the court arranged the language gives it poor potential as a case precedent.

[66] Main Case Docket No. 593.
[67] These statements are quoted *supra,* at p. 5.

whether the Trustee either negligently failed to pursue the Appeal for the benefit of the estate, or whether he willfully elected not to pursue the Appeal, in violation of his fiduciary duties, for the purpose of causing Farnet to withdraw his motion to remove the Trustee.   Accordingly, both parties' motions for summary judgment on this claim will be denied.

The Debtor's claims based on Trustee's failure to abandon the Appeal, however, are insufficient as a matter of law.  As early as May, 2008, Debtor stipulated with the Trustee that "the cost of litigating the Appeal to the Estate would not be beneficial to the Debtor's bankruptcy estate."[68]  Thus, Debtor was completely aware, in May, 2008, some 18 months before the Appeal was first dismissed by the Louisiana Court of Appeals, that the Trustee did not intend to pursue the Appeal at the expense of the estate.   Debtor was not at Trustee's mercy if she wished the Appeal to be abandoned.  She had the right at any time, pursuant to 11 U.S.C. § 554(b), to move the Court to compel the Trustee to abandon the Appeal.  The Court will not impose liability on the Trustee for failing to act when the Debtor had the right to compel the action, but chose not to do so.

### 2.        The Failure to Pay the Life Insurance Premium.

In her complaint, the Debtor alleges that the Trustee "let a valuable life insurance policy lapse on the life of" [her deceased husband], that the policy was property of the estate, and that the Trustee had "the power and authority" to act upon the insurance policy, but failed to pay the premium due and "failed to abate the known injury" to the Debtor.[69]

In the materials submitted by both Debtor and Trustee, it is undisputed that the life insurance policy in question was not owned by Debtor, but by Perez Architects/Interiors APC, a corporation in which Debtor owned an interest.  The Trustee could not have used estate funds to pay the premiums on this or any policy that was for the benefit of an entity other than the estate. To have done so would have been a breach of fiduciary duties to Debtor's estate.[70]  As a matter of law there can be no liability for the Trustee's failure to act in a manner that would have been contrary to his fiduciary responsibilities.

The Debtor also seems to argue that the Trustee negligently or intentionally misled her into believing that he would pay the life insurance premiums until after the policy had lapsed. However, where the Debtor was neither owner nor beneficiary of the policy, this claim does not entitle Debtor to relief.

### 3.        Forced Payment of Taxes

As noted above, Debtor did not respond to the Trustee's motion for summary judgment on this claim with any argument or evidence.  The Court concludes, therefore, that there is no disputed issue of fact on Debtor's claim that Trustee's delay in administering the estate caused

---

[68] Main Case Docket No. 487.

[69] Complaint, ¶¶ 53, 57 and 60 [A.P. Docket No. 1].

[70] *See In re William Gordon Hoover, Jr.*, Case No. 02-25306-ABC, July 19, 2004 [Docket No. 435] (oral findings and conclusions made on record).

her to pay pre-petition taxes, and that Trustee is entitled to summary judgment in his favor on this claim.

## III.    CONCLUSION

For the reasons stated above, it is, therefore:

**ORDERED** that the Trustee's Motion for Summary Judgment is GRANTED, and the Debtor's Cross-Motion for Summary Judgment is DENIED as to the claims for the failure to abandon the Appeal, failure to pay the life insurance premium, and delay resulting in payment by Debtor of pre-petition tax claims; and it is

**FURTHER ORDERED** that the Trustee's Motion for Summary Judgment and the Debtor's Motion for Summary Judgment are DENIED with respect to the claim that the Trustee negligently or willfully breached his fiduciary duties to Debtor in failing to pursue the Appeal.

DATED: August 13, 2012                    BY THE COURT:

_____
A. Bruce Campbell
United States Bankruptcy Judge

12